IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ARTHUR EUGENE TYES,

    Petitioner,               No. 2:12-cv-1755 TLN DAD P

    vs.

L.S. McEWEN, Warden,

    Respondent.         FINDINGS AND RECOMMENDATIONS

_____/

       Petitioner, a state prisoner proceeding pro se, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On November 30, 2012, respondent filed the pending motion to dismiss, arguing that petitioner's habeas petition is time-barred under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Petitioner has filed an opposition to the motion. Respondent has not filed a reply.

**BACKGROUND**

       On December 22, 1993, a Sacramento County Superior Court jury found petitioner guilty of first-degree murder and shooting at an inhabited dwelling. On January 28, 1994, judgment was entered and petitioner was sentenced to thirty years to life in state prison. On January 4, 1995, the California Court of Appeal for the Third Appellate District affirmed the

/////

judgment of conviction. On March 15, 1995, the California Supreme Court denied review. (Resp't's Lodged Docs. 1-4.)

Thereafter, petitioner filed five pro se petitions for a writ of habeas corpus challenging his judgment of conviction in state court. Applying the mailbox rule,[1] on August 26, 2003, petitioner filed a petition for writ of habeas corpus in the Sacramento County Superior Court, which the court denied on September 24, 2003. On July 1, 2004, petitioner filed a petition for writ of habeas corpus in the California Supreme Court, which the court denied on June 15, 2005. On May 2, 2011, petitioner filed a second petition for writ of habeas corpus in the Sacramento County Superior Court, which the court denied on December 27, 2011. On January 19, 2012, petitioner filed a petition for writ of habeas corpus with the California Court of Appeal, which the court denied on February 2, 2012. Finally, on February 9, 2012, petitioner filed a second petition for writ of habeas corpus with the California Supreme Court, which the court denied on May 16, 2012. (Resp't's Lodged Docs. 5-14.)

On June 20, 2012, petitioner commenced this action by filing a federal petition for writ of habeas corpus.

**RESPONDENT'S MOTION TO DISMISS**

I. Respondent's Motion

Respondent moves to dismiss the pending federal habeas petition, arguing that it is time-barred. Specifically, respondent argues that on March 15, 1995, the California Supreme Court denied petitioner's petition for review, causing his judgment of conviction to become "final" on June 13, 1995, after the time for filing a petition for writ of certiorari in the U.S. Supreme Court expired. Respondent argues that, because petitioner's conviction predated AEDPA, he therefore had until April 24, 1997, to file his federal habeas petition. However,

/////

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988).

2

petitioner did not file his habeas petition in this action until June 20, 2012. (Resp't's Mot. to Dismiss at 3.)

Respondent acknowledges that the proper filing of a state post-conviction application challenging a judgment of conviction tolls the AEDPA's one-year statute of limitations period. However, petitioner did not file his first state habeas petition until after the statute of limitations for the filing of a federal petition had expired. Respondent contends that petitioner's habeas filings in state court after the AEDPA statute of limitations had already expired cannot serve to restart the clock at zero or otherwise save a claim for federal habeas relief from being time barred. (Resp't's Mot. to Dismiss at 4-5.)

II. Petitioner's Opposition

In his opposition to respondent's motion to dismiss, petitioner acknowledges that his petition was untimely filed but argues that court should equitably toll the AEDPA statute of limitations for seeking federal habeas relief in this case because he suffers from a mental health condition and has been taking psychiatric and/or psychotropic medication that prevented him from timely filing his federal habeas petition. Petitioner contends that other inmates prepared the habeas petitions he filed in state court, but those inmates were not familiar with § 2254 petitions and could not assist him in seeking federal habeas relief. Upon his transfer to CSP-Los Angeles County, petitioner contends that he met a fellow inmate who could prepare the pending federal habeas petition for him. (Pet'r's Opp'n to Resp't's Mot. to Dismiss at 1-3.)

**ANALYSIS**

I. The AEDPA Statute of Limitations

On April 24, 1996, Congress enacted AEDPA which amended 28 U.S.C. § 2244 by adding the following provision:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

3

    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

   (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

The one-year AEDPA statute of limitations applies to all federal habeas corpus petitions filed after the statute was enacted and therefore applies to the pending petition. See Lindh v. Murphy, 521 U.S. 320, 322-23 (1997).

II. Application of § 2244(d)(1)(A)

  As noted above, on December 22, 1993, a Sacramento County Superior Court jury found petitioner guilty of first-degree murder and shooting at an inhabited dwelling. On January 28, 1994, that court entered judgment and sentenced petitioner to thirty years to life in state prison. On January 4, 1995, the California Court of Appeal for the Third Appellate District affirmed the judgment of conviction. On March 15, 1995, the California Supreme Court denied review.

  For purposes of federal habeas review, petitioner's conviction became final on June 13, 1995, ninety days after the California Supreme Court denied review. See Summers v. Schriro, 481 F.3d 710, 717 (9th Cir. 2007); Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999). Congress subsequently enacted AEDPA on April 24, 1996. Where, as here, petitioner's

4

conviction became final prior to the enactment of AEDPA, the statute of limitations for the filing of a federal habeas petition began to run on April 25, 1996, and expired one year later on April 24, 1997.  See Patterson v. Stewart, 251 F.3d 1243, 1245-47 (9th Cir. 2001).  Petitioner did not file his pending federal habeas petition until more than fifteen years later, on June 20, 2012.  Accordingly, petitioner's federal petition for writ of habeas corpus is untimely unless he is entitled to the benefit of tolling.

III.  Application of § 2244(d)(2)

"The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted" toward the AEDPA statute of limitations.  28 U.S.C. § 2244(d)(2).  The statute of limitations is not tolled during the interval between the date on which a judgment becomes final and the date on which the petitioner files his first state collateral challenge because there is no case "pending" during that interval  Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).  Once a petitioner commences state collateral proceedings, a state habeas petition is "pending" during one full round of review in the state courts, including the time between a lower court decision and the filing of a new petition in a higher court, as long as the intervals between the filing of those petitions are "reasonable."  Carey v. Saffold, 536 U.S. 214, 222-24 (2002).

In this case, petitioner filed five habeas petitions in state court.  However, he did not file his first petition in the Sacramento County Superior Court until August 26, 2003, over six years after the statute of limitations for the filing of a federal habeas petition had expired. "[S]ection 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed."  Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003). Accordingly, petitioner is not entitled to statutory tolling of the AEDPA statute of limitations.

IV.  Equitable Tolling

The United States Supreme Court has confirmed that the AEDPA statute of limitations "is subject to equitable tolling in appropriate cases."  Holland v. Florida, __ U.S. __,

5

130 S. Ct. 2549, 2560 (2010). See also Doe v. Busby, 661 F.3d 1001, 1011 (9th Cir. 2011); Lakey v. Hickman, 633 F.3d 782, 784 (9th Cir.), cert. denied ___U.S.___, 131 S. Ct. 3039 (2011); Porter v. Ollison, 620 F.3d 952, 959 (9th Cir. 2010).[2] However, "a 'petitioner' is 'entitled to equitable tolling' only where he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland, 130 S. Ct. at 2562 (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). See also Doe, 661 F.3d at 1011; Lakey, 633 F.3d at 784; Porter, 620 F.3d at 959; Harris v. Carter, 515 F.3d 1051, 1055 (9th Cir. 2008) ("We have stated that the purpose of the equitable tolling doctrine is to soften the harsh impact of technical rules which might otherwise prevent a good faith litigant from having a day in court. . . . Equitable tolling is typically granted when litigants are unable to file timely petitions as a result of external circumstances beyond their direct control.") (internal quotation marks and citations omitted). Thus, equitable tolling is appropriate only when external forces, rather than a lack of diligence, account for the failure to file a timely petition. Velasquez, 639 F.3d at 969; Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).

Courts are expected to "take seriously Congress's desire to accelerate the federal habeas process." Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283, 1289 (9th Cir. 1997), overruled in part on other grounds by Calderon v. United States Dist. Court (Kelly), 163 F.3d 530 (9th Cir. 1998). See also Corjasso v. Ayers, 278 F.3d 874, 877 (9th Cir. 2002) (describing the Ninth Circuit's standard as setting a "high hurdle" to the application of equitable tolling). To this end, "the circumstances of a case must be 'extraordinary' before equitable tolling can be applied[.]" Holland, 130 S. Ct. at 2564. Whether a party is entitled to equitable tolling "turns on the facts and circumstances of a particular case." Spitsyn v. Moore, 345 F.3d 796, 801 (9th Cir. 2003) (quoting Fisher v. Johnson, 174 F.3d 710, 713 (5th Cir. 1999)). See

---

[2] The Ninth Circuit had previously so held. See Ramirez v. Yates, 571 F.3d 993, 997 (9th Cir. 2009); Waldron-Ramsey v. Pacholke, 556 F.3d 1008, 1011 n.2 (9th Cir. 2009); Calderon v. U.S. District Court for the Central District of California (Kelly), 163 F.3d 530, 541 (9th Cir. 1998) (en banc).

also Holland, 130 S. Ct. at 2565 (leaving "to the Court of Appeals to determine whether the facts in this record entitle Holland to equitable tolling, or whether further proceedings, including an evidentiary hearing, might indicate that respondent should prevail"); Doe, 661 F.3d at 1012 ("[W]hether a prisoner is entitled to equitable tolling under AEDPA will depend on a fact-specific inquiry by the habeas court which may be guided by 'decisions made in other similar cases.'") (citing Holland, 130 S. Ct. at 2563).

Petitioner's eligibility for equitable tolling as a result of his alleged mental health condition requires him to satisfy a two-prong test:

> (1) First, a petitioner must show his mental impairment was an "extraordinary circumstance" beyond his control . . . by demonstrating the impairment was so severe that either
>
> (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>
> (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
>
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

Bills v. Clark, 628 F.3d 1092, 1099-1100 (9th Cir. 2010). In evaluating whether a petitioner is entitled to equitable tolling under this two-prong test, the Ninth Circuit has stated:

> the district court must: (1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing; (2) determine, after considering the record, whether the petitioner satisfied his burden that he was in fact mentally impaired; (3) determine whether the petitioner's mental impairment made it impossible to timely file on his own; and (4) consider whether the circumstances demonstrate the petitioner was otherwise diligent in attempting to comply with the filing requirements.

Id. at 1100-01.

In this case, the court finds that petitioner has not met his burden of showing that his mental impairment was an "extraordinary circumstance" that made it impossible for him to

file a federal habeas petition during the relevant filing period, which in this case spans more than fifteen years.  In support of his argument for equitable tolling, petitioner has submitted to the court a medical/mental health report from the Alta California Regional Center that states in part petitioner functions at a mentally retarded range of intelligence. (Petn'r's Opp'n to Resp't's Mot. to Dismiss, Ex. A.)  However, this report is based on an evaluation of petitioner conducted in 1988, when he was only fourteen years of age. (Id.)  Medical records that pre-date the relevant filing period are of limited relevance in proving that petitioner's mental condition prevented him from timely filing his federal habeas petition. See Laws v. Lamarque, 351 F.3d 919, 923 (9th Cir. 2009) ("After a hearing Laws was adjudicated competent to stand trial in 1993, notwithstanding evidence of serious mental illness.  But that determination has little bearing on his competence vel non during the period 1996-2000" – i.e., "the years when his petitions should have been filed."); see also Avila v. MacDonald, No. CV 11-05333-MMM (SH), 2011 WL 6937350 at *3 (C.D. Cal. Nov. 1, 2011) (documents from 2004 filed in support of petitioner's claim for equitable tolling have no bearing on petitioner's mental state after his conviction became final in 2008). In addition, in the same report on which petitioner relies the psychologist explained that petitioner's "scores are probably a minimal estimate of his full potential" because he was very passive and anxious during testing. (Petn'r's Opp'n to Resp't's Mot. to Dismiss, Ex. A.)

    Petitioner has also submitted copies of his psychiatric medication informed consent forms and copies of his prison mental health placement chronos from the years 2001 through 2009. (Petn'r's Opp'n to Resp't's Mot. to Dismiss, Exs. C & D.)  Contrary to petitioner's argument, however, these documents show that his mental impairment was not so severe that he was unable rationally or factually to understand the need to timely file his petition or that he was unable personally to prepare a federal habeas petition and effectuate its filing. See Bills, 628 F.3d at 1099-00; Roberts, 627 F.3d at 773; see also Orthel v. Yates, No. C 10-03612 SI, 2012 WL 3580606, at *4 (N.D. Cal. Aug. 17, 2012) (petitioner failed to demonstrate that for

a full eleven years he was unable to understand the need to timely file his federal habeas petition or that his mental state rendered him unable to file or effectuate the filing of a petition even though he had periods of psychotic breaks when going off his medication). As an initial matter, the informed consent forms submitted by petitioner here show that his physicians prescribed him various medications over time. However, petitioner has not explained how these medications prevented him from timely filing his federal habeas petition. In fact, the informed consent forms submitted by petitioner list the medication side effects as dry mouth, thirst, nausea, and diarrhea as well as other potential side effects that would not appear to effect his mental faculties or ability to prepare a habeas petition. (Id., Ex. C.) Moreover, the mental health placement chronos submitted by petitioner reflect that he responded well to the medication he was taking. On each of the chronos, prison clinicians evaluated petitioner's mental health and behavior and stated that his grooming was appropriate (as opposed to inappropriate), his speech was intelligible (as opposed to unintelligible), and his comprehension process was adequate (as opposed to inadequate). Clinicians also gave petitioner a global assessment of functioning score most often between 60-70. Such a score "indicates some mild symptoms or some difficulty in social, occupations, or school functioning, but generally functioning pretty well and has some meaningful interpersonal relationships." See Udell v. Allison, No. EDCV 10-1975-CAS (DTB), 2012 WL 4069809 at *8-9 (C.D. Cal. Aug. 22, 2012) (petitioner's medical records reflecting GAF scores between 64 and 75 indicated that he was not unable to understand the need to timely file nor was he rendered unable to personally prepare and file his habeas petition) (citing American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") at 34.).

What is more, as noted above, from 2003 to 2012, petitioner filed five pro se habeas petitions in state court before seeking federal habeas relief in this court. If, as petitioner contends, he enlisted the help of his fellow inmates to file his state habeas petitions, petitioner could have reasonably been expected to enlist others to assist him in filing his federal habeas

action during the same period. See Payne v. Gipson, No. ED CV 12-1337-CAS (SP), 2013 WL 693011 at *6 (C.D. Cal. Jan. 15, 2013) ("Although petitioner's papers indicate he never personally prepared a habeas petition, petitioner admittedly understood that he needed 'to go [through] the courts to obtain relief' and sought the assistance of three different inmates to file four habeas petitions. In other words, petitioner's mental state did not 'interfere[] with the ability to understand the need for assistance, the ability to secure it, or the ability to cooperate with or monitor assistance the petitioner does secure.'") (quoting Bills, 628 F.3d at 1100); Matthews v. Curry, No. SACV 05-780-PA (MAN), 2011 WL 5975257 at *12 (C.D. Cal. Aug. 18, 2011) ("Indeed, the record demonstrates that Petitioner understood the need to pursue habeas relief and took steps to do so, whether on his own or with the assistance of others."). For all of these reasons, the court cannot say that petitioner has satisfied his burden of establishing that his alleged mental health condition was so severe so as to constitute an "extraordinary circumstance" warranting equitable tolling.

Finally, even if petitioner could establish that his mental impairment constituted such an "extraordinary circumstance," the court also finds that petitioner has not diligently pursued his federal habeas claims throughout the relevant period. Petitioner's opposition to the pending motion to dismiss is devoid of any specific allegations as to what he did to pursue his claims for relief over the fifteen year period he now seeks to toll. At the latest, by August 26, 2003, when petitioner filed his first petition for writ of habeas corpus in the Sacramento County Superior Court, petitioner was capable of pursuing habeas relief, regardless of his mental impairment. However, petitioner waited an additional nine years after that date before he commenced this action. In this regard, petitioner's lack of diligence rather than any mental impairment was the "but for" cause of the lengthy and inexplicable delay in seeking federal habeas relief. See Stancle v. Clay, 692 F.3d 948, 959 (9th Cir. 2012) ("the petitioner must show diligence in seeking assistance with what he could not do alone"); Bills, 628 F.3d 1101 ("the petitioner must diligently seek assistance and exploit whatever assistance is reasonably

available"); Rhodes v. Hill, No. CV 11-09059-VAP (VBK), 2012 WL 4208113 at *12 (C.D. Cal. July 23, 2012) ("facts in the record do not show a completely debilitating mental incapacity during the relevant years; rather the record evidences a lack of diligence in overcoming limitations that were well-known to Petitioner . . . .")  Under these circumstances, the court cannot say that petitioner was "otherwise diligent" as required in order to entitle him to the benefit of equitable tolling.

For the reasons set forth above, the court concludes that petitioner is not entitled to equitable tolling of the AEDPA statute of limitations in this case.[3]

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss (Doc. No. 10) be granted;

2. All other pending motions (Doc. No. 18) be denied as moot; and

3. This action be closed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written

---

[3] Petitioner has submitted an unsigned declaration with his opposition to the pending motion to dismiss in which he states that he never knew of the AEDPA statute of limitations and explains that he is illiterate.  Insofar as petitioner is arguing that he is entitled to equitable tolling for these stated reasons, he is advised that ignorance of the law and a low education level also do not justify equitable tolling of the statute of limitations.  See Raspberry v. Garcia, 448 F.3d 1150, 1154 (9th Cir. 2006) ("a pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling" of the limitations period); Vasquez v. Martel, No. 2:09-cv-3141 GEB KJN P, 2011 WL 285045 at *4 (E.D. Cal. Jan. 25, 2011) ("a low educational level, even to the point of illiteracy, does not automatically entitle an inmate to equitable tolling" of the AEDPA statute of limitations); Green v. Small, No. CV 10-139 DOC (JC), 2011 WL 91045 at *2 (C.D. Cal. Jan. 2, 2011) (rejecting petitioner's claim of entitlement to equitable tolling of the AEDPA statute of limitations based on his lack of education, possible illiteracy, and pro se status); Stableford v. Martel, No. SA CV 09-01071 JST (RZ), 2010 WL 5392763, at *3 (C.D. Cal. Sept. 14, 2010) (rejecting petitioner's argument that he was entitled to equitable tolling because he was illiterate, dyslexic, generally uneducated and had only limited access to an inadequate prison law library on the grounds that "[n]one of these circumstances is sufficiently extraordinary to warrant tolling").

objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

In any objections he elects to file, petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  <u>See</u> Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED: April 30, 2013.

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
tye1755.157